# No. 12-1207

In the
United States Court of Appeals
for the Sixth Circuit

## United States of America,

Plaintiff-Appellee

v.

## Umar Farouk Abdulmutallab,

Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 2:10-cr-20005

## SEALED Brief for the United States

Barbara L. McQuade
United States Attorney

Jonathan Tukel
Assistant United States Attorney
United States Attorney's Office
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: 313-226-9749
Fax: (313) 226-4678
Jonathan.Tukel@usdoj.gov

# Table of Contents

Table of Authorities................................................................................... iii

Oral Argument Statement ........................................................................vi

Issues Presented.........................................................................................1

Statement of the Case ...............................................................................1

Statement of Facts .....................................................................................5

Summary of Argument...............................................................................8

Argument.....................................................................................................9

I.   The district court did not abuse its discretion by declining to
     order a competency examination. ....................................................9

     A.   The district court had no reason to question
          Abdulmutallab's competency to stand trial............................9

     B.   The district court did not abuse its discretion in
          declining to order a psychological examination prior to
          allowing Abdulmutallab to waive counsel. ...........................19

II.  Abdulmutallab's guilty plea waived his right to appeal the
     district's court's finding that his post-arrest statement was
     voluntary. .......................................................................................31

III. Abdulmutallab's sentences were lawful. ......................................33

     A.   The life sentences were not cruel and unusual. ..................33

     B.   The life sentences were substantively reasonable. ..............39

IV.  Section 924(C) is a proper exercise of Congress's authority. ........41

i

Conclusion .................................................................................. 47

Certificate of Compliance with Rule 32(a) ............................................ 48

Certificate of Service ...................................................................... 49

Relevant District Court Documents ....................................................... 50

# Table of Authorities

## Cases

*Amelkin v. McClure*, 205 F.3d 294 (6th Cir. 2000) .................................. 41

*Dusky v. United States*, 362 U.S. 402 (1960) .................................. passim

*Ewing v. California*, 538 U.S. 11 (2003) ........................................... 35, 36

*Faretta v. California*, 422 U.S. 806 (1975)..............................................20

*Godinez v. Moran*, 509 U.S. 389 (1983) ......................................... passim

*Harmelin v. Michigan*, 501 U.S. 957 (1991) .............................. 36, 38, 39

*Indiana v. Edwards*, 554 U.S. 164 (2008).................................... passim

*Pate v. Robinson*, 383 U.S. 377 (1966) ....................................................14

*Perez v. United States*, 402 U.S. 146 (1971)....................................45, 46

*Solem v. Helm*, 463 U.S. 277 (1983).................................................35, 36

*Southern R. Co. v. United States*, 222 U.S. 20 (1911) ...........................45

*Tollett v. Henderson*, 411 U.S. 258 (1973) .............................................32

*United States v. Alden*, 527 F.3d 653 (7th Cir. 2008)............................12

*United States v. Al-Zubaidy*, 283 F.3d 804 (6th Cir. 2002) ...................41

*United States v. Back*, 307 Fed. Appx. 876 (6th Cir. 2008)..............30, 31

*United States v. Bell*, 350 F.3d 534 (6th Cir. 2003)................................32

*United States v. Clark,* 435 F.3d 1100 (9th Cir. 2006) ...........................46

*United States v. Cochrane*, 702 F.3d 334 (6th Cir. 2012) ...................... 39

*United States v. Cornejo-Sandoval*, 564 F.3d 1225 (10th Cir. 2009) ..... 11

*United States v. Farrior*, 535 F.3d 210 (4th Cir. 2012) .......................... 40

*United States v. Franklin*, 499 F.3d 578 (6th Cir.2007) ........................ 40

*United States v. Geier*, 521 F.2d 597 (6th Cir. 1975) .............................. 11

*United States v. George*, 85 F.3d 1433 (9th Cir. 1996) ........................... 11

*United States v. Herrick*, 2013 WL 275908 (6th Cir. 2013) ................... 38

*United States v. Hill*, 30 F.3d 48 (6th Cir. 1994) ................................... 38

*United States v. Jones*, 569 F.3d 569 (6th Cir. 2009) ............................ 33

*United States v. Lopez*, 514 U.S. 549 (1995) ................................... 45, 46

*United States v. McDowell*, 814 F.2d 245 (6th Cir. 1987) ..................... 20

*United States v. Pendleton*, 658 F.3d 299 (3rd Cir. 2011) ..................... 46

*United States v. Penney*, 576 F.3d 297 (6th Cir. 2009) .......................... 40

*United States v. Ricketts*, 317 F.3d 540 (6th Cir. 2003) ....... 42, 43, 44, 47

*United States v. Rose*, 522 F.3d 710 (6th Cir. 2008) .............................. 41

*United States v. Ross*, 703 F.3d 856 (6th Cir. 2012) ........................ 19, 26

*United States v. Thompson*, 587 F.3d 1165 (9th Cir. 2009) ................... 21

*United States v. Williams*, 998 F.2d 258 (5th Cir. 1993) ....................... 11

**Federal Statutes**

18 U.S.C. § 115 ...................................................................................... 44

18 U.S.C. § 924(c) ........................................................................... passim

18 U.S.C. § 1113 ......................................................................... 2, 44, 45

18 U.S.C. § 2332a ...................................................................................... 3

18 U.S.C. § 2332b ................................................................ 2, 42, 45, 46

18 U.S.C. § 32 ..................................................................................... 3, 42

18 U.S.C. § 3553(a) ..................................................................... 33, 39, 40

18 U.S.C. § 4241 ..................................................................................... 10

49 U.S.C. § 46501 .................................................................................. 45

49 U.S.C. § 46506 ................................................................ 2, 42, 44, 45

**Federal Rules**

Federal Rule of Criminal Procedure 11(a)(2) ......................................... 32

## Oral Argument Statement

The United States has no objection to Abdulmutallab's request for oral argument.

# Issues Presented

1.      Whether the district court abused its discretion in declining to order a competency examination prior to finding defendant competent to stand trial or prior to allowing defendant to waive counsel.

2.      Whether defendant's guilty plea waived his right to appeal the district's court's finding that his post-arrest statement was voluntary.

3.      Whether defendant's four life sentences for his act of terrorism which sought to kill 289 people aboard an aircraft in flight were cruel and unusual punishments violative of the Eighth Amendment, and whether the life sentences were substantively unreasonable.

4.      Whether, as applied to the facts of this case, 18 U.S.C. § 924(c) is unconstitutional as beyond the power of Congress to legislate.

# Statement of the Case

Defendant Umar Farouk Abdulmutallab, widely known as the "Underwear Bomber," was arrested on December 25, 2009, following his failed attempt on behalf of Al Qaeda to destroy Northwest Flight 253 with a bomb as the plane approached Detroit, Michigan. The Federal Defender Office was appointed to represent Abdulmutallab the following day, at his first appearance on a criminal complaint. (R. 1: Criminal complaint, PgID 1-6; R. 3: Order appointing Federal Defender, PgID 8). Abdulmutallab was indicted on January 6, 2010. (R. 7: Indictment, PgID 12-19).

The Chief Federal Defender and two of her colleagues entered appearances for the defendant on December 28, 2009. (R. 4, 5, 6: Appearances, PgID 9, 10, 11). More than eight months later, however, in September 2010, the defendant asked his attorneys to withdraw from his case and waived his right to counsel. (R. 71: Tr. of Stat. Conf., PgID 324-332). The district court appointed standby counsel the next day. (R. 20: Order, PgID 54).

A grand jury returned a superseding indictment in December 2010. (R. 28: First Superseding Indictment, PgID 86-95). The superseding indictment charged Abdulmutallab with conspiracy to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. §§ 2332b(a)(1) and 2332b (a)(2) (count one); possession of a firearm or destructive device in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(ii), and 924(c)(1)(C)(2) (count two); attempted murder within the special aircraft jurisdiction of the United States, in violation of 18 U.S.C. § 1113 and 49 U.S.C. § 46506 (count three); using and carrying a firearm or destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(ii), and 924(c)(1)(C)(2)

(count four); willfully placing a destructive device upon and in proximity to a civil aircraft which was used and operated in interstate, overseas, and foreign air commerce, in violation of 18 U.S.C. § 32(a)(2 (count five); possession of a firearm or destructive device in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(ii), and 924(c)(1)(C)(2) (count six); attempted use of a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2) (count seven); and willful attempt to destroy and wreck a civil aircraft, in violation of 18 U.S.C. §§ 32(a)(8) and 32(a)(1) (count eight). Each of the three charges under 18 U.S.C. § 924(c) was tied to a different predicate crime of violence.

On the motion cut-off date, approximately two months before the start of trial, standby counsel filed an ex parte motion seeking "expert funds" for a competency examination of Abdulmutallab. (Sealed Appendix, Vol. 1: Motion for Competency Examination). The district court held an evidentiary hearing on August 17, 2011, at which Abdulmutallab testified. The district court denied the motion because it found that a psychiatric examination was unnecessary: "I have no reason to believe that he is not [competent], and I think that there

needs to be more of a showing than was set forth in the motion that was filed in this case to order a competency exam." (R. 116: Mot. Tr., PgID 762-763).

After three days of jury selection, trial began with the government's opening statement and the first witness on October 11, 2011. (R. 119: Tr. of Jury Trial Vol. 4, PgID 1003-1090). The next morning, Abdulmutallab pleaded guilty to all charges in the superseding indictment, without a plea agreement. (R. 114: Tr. of Jury Trial, Vol. 5, PgID 672-706). Two of the charges under 18 U.S.C. § 924(c) required life sentences, because they were "second or subsequent convictions" and they involved a "destructive device." *See id.* at PgID 683; 18 U.S.C. § 924(c)(1)(C)(ii) ("In the case of a second . . . conviction under this subsection, the person shall – if the firearm is a . . . destructive device . . . be sentenced to imprisonment for life.").

On February 16, 2012, the district court sentenced Abdulmutallab to mandatory life terms on two of the charges under 18 U.S.C. § 924(c), and the mandatory thirty year sentence as to the other count under § 924(c). The district court also imposed maximum sentences on the two life counts (counts one and seven). All of those

sentences were made consecutive to each other, as required by law. The district court imposed concurrent statutory maximum sentences on the remaining charges. (R. 139: Tr. Sent. PgID 1259-1260; R. 136: Judgment, PgID 1197-1202). The following day, the defendant filed a notice of appeal. (R. 137: Notice of Appeal, PgID 1203). This Court appointed counsel at the defendant's request.

## Statement of Facts

Umar Farouk Abdulmutallab identified himself as an Al Qaeda terrorist. Abdulmutallab, who is a graduate of the University College of London[1] and a fluent English speaker (R. 114: Tr. of Jury Trial, Vol. 5, Page ID 677), freely admitted that, on December 25, 2009, he attempted to blow up Northwest-Delta Flight 253 carrying himself and 289 other people from Amsterdam, the Netherlands, to Detroit, Michigan. *See, e.g.,* R. 114: Tr. of Jury Trial, Vol. 5, PgID 694-695 (Abdulmutallab: "[I]n fulfillment of a religious obligation, I decided to participate in jihad against the United States. The Koran obliges every able Muslim to

---

[1] Rated the 4th best university in the world for 2013, according to U.S. News and World Report.  See http://www.usnews.com/education/worlds-best-universities-rankings/top-400-universities-in-the-world.

participate in jihad and fight in the way of Allah, those who fight you, and kill them wherever you find them, some parts of the Koran say, an eye for an eye, a tooth for a tooth."; *id.* at 698 ("[T]he United States should be warned that if they continue and persist in promoting the blasphemy of Muhammad and the prophets, peace be upon them all, and the U.S. continues to kill and support those who kill innocent Muslims, then the U.S. should await a great calamity that will befall them through the hands of the mujahideen soon by God's willing permission. Or God will strike them directly with a great calamity soon by his will, Amin. If you laugh at us now, we will laugh at you later in this life and on the day of judgment by God's will, and our final call is all praise to Allah, the lord of the universe, Allahu Akbar."); R. 139: Tr. Sent., PgID 1244 (Abdulmutallab: "The mujahedeen are proud to kill in the name of God, and that is exactly what God told us to do in the Koran.")

Abdulmutallab carried a bomb concealed in his underwear. (R. 114: Tr. of Jury Trial, Vol. 5, Page ID 700). After spending significant time in the bathroom on board the flight, just prior to landing and while over U.S. airspace, Abdulmutallab returned to his seat and tried to set

6

off the explosion. (R. 119: Tr. of Jury Trial, Vol. 4, PgID 1007-1009). But the bomb did not operate as intended. Instead, it made a loud pop, and then burst into flames, setting the defendant's clothing on fire and causing a fire aboard the aircraft, witnessed by numerous passengers. (*Id*. at PgID 1010-1015). Prior to landing, Abdulmutallab told several passengers and crew members that he had been carrying an "explosive device." (*Id*. at PgID 1017-1018). Once Customs and Border Protection officers arrested him, Abdulmutallab confessed that he was with Al Qaeda; that he had "tried to bring down the airplane;" and that he had received the explosive device in Yemen. (*Id*. at PgID 1038-1039). He made similar but more detailed statements to FBI agents. (*Id*. at PgID 1041-1043; R. 84: Response of United States, PgID 445-463). And while in Yemen, the defendant had made a martyrdom video which Al Qaeda released after his mission. In the video Abdulmutallab implored "My Muslim brothers in the Arabian Peninsula, you have to answer the call of jihad because the enemy is in your land, along with their Jewish and Christian armies." (R. 119: Tr. of Jury Trial, Vol. 4, Page ID 1047-1051; R. 148: Mot. Tr. PgID 1994-2001). As the district judge observed at

sentencing, "this was an act of terrorism[.] [T]hat cannot be quibbled with." (R. 139: Tr. Sent. PgID 1254).

## Summary of Argument

Abdulmutallab's argument that the district court should have ordered a competency examination fails, because the court had no reason to question the defendant's competency to stand trial or to plead guilty. Under those circumstances, the district court did not abuse its discretion in declining to order an examination. Defendant's argument that the district court also should have ordered a competency examination prior to allowing him to waive counsel fails for the same reason.

By pleading guilty, the defendant waived his right to appeal the district court's ruling finding his allegedly involuntary statement admissible.

Abdulmutallab's four life sentences did not violate the constitutional prohibition against cruel and unusual punishment. The magnitude of his crimes—seeking to kill 289 people on behalf of a violent terrorist organization; his complete lack of remorse, which actually is pride in his mission; and his future dangerousness, make the

life sentences proportional to the crimes. The defendant's sentences were substantively reasonable for the same reasons.

Section 924(c) of Title 18 is constitutional under the Commerce Clause, because the enhanced penalties it provides are tied to specific underlying charges which each contain their own requirement of a substantial effect on interstate commerce. The federal jurisdiction over the underlying charges provides federal jurisdiction for §924(c), which thus is constitutional.

## Argument

### I. The district court did not abuse its discretion by declining to order a competency examination.

#### A. The district court had no reason to question Abdulmutallab's competency to stand trial.

Competency to stand trial is determined by "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). A competency determination is not required "in every case in which a defendant seeks to plead guilty or waive his right to counsel. As in any criminal case, a

9

competency determination is necessary only when a court has reason to doubt the defendant's competence." *Godinez v. Moran*, 509 U.S. 389, 400 n.13 (1983). The *Dusky* standard for competence to stand trial also applies to defendants who plead guilty. *Godinez* at 399.

These standards are incorporated in 18 U.S.C. § 4241, which provides in relevant part:

> **(a) Motion To Determine Competency of Defendant.**— At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. **The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.**
>
> **(b) Psychiatric or Psychological Examination and Report.**— Prior to the date of the hearing, the court **may** order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court,

> pursuant to the provisions of section 4247(b) and
> (c).

(emphasis added). The statute "does not automatically require an order for a psychiatric examination on every unsupported suggestion of possible mental problems." *United States v. Geier*, 521 F.2d 597, 600 (6th Cir. 1975). And it permits the district court to conduct a competency hearing without ordering a psychiatric examination. *United States v. George*, 85 F.3d 1433, 1437 (9th Cir. 1996); *United States v. Williams*, 998 F.2d 258, 263 & n.10 (5th Cir. 1993). Since the district court's decision about whether to order a psychiatric examination or whether a defendant is competent is so heavily dependent on the court's observations of the defendant's behavior and demeanor, reviewing courts give it considerable deference. *Id.*; *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1234 & n.5 (10th Cir. 2009) (collecting cases).

In this case, the statute did not require a hearing because the district court found no cause to question the defendant's competency. But the district court chose to conduct a hearing to allay standby counsel's concerns. At that hearing, the court found Abdulmutallab competent to stand trial. The judge explained that she had interacted with Abdulmutallab on a number of occasions and found no reason to

11

question his competency. (*See* R. 116: Mot. Tr. PgID 762-763) ("I'm satisfied that Mr. Abdulmutallab is in fact competent to proceed in this matter, and I have no reason to believe that he is not, and I think that there needs to be more of a showing than was set forth in the motion that was filed in this case to order a competency exam."). The district court denied standby counsel's motion without prejudice, stating that "If something arises that makes you feel it important to renew that motion, then by all means please do so." (R. 116: Mot. Tr. PgID 763.)

The district court was fully justified in refusing to order an examination of Abdulmutallab. "The district court is in the best position to determine the need for a competency hearing." *United States v. Alden*, 527 F.3d 653, 659 (7th Cir. 2008) (citation omitted). Standby counsel's motion said little of substance. It related that "there have been moments when the defendant has demonstrated irrational behavior." (Brief in Support of Motion, at 4). But no examples of irrational behavior were spelled out in the brief. The brief also claimed there were "a series of reoccurring mental lapses on behalf of the defendant." *Id*.at 4-5. This seemed to consist only of an allegation that during meetings with standby counsel, "Defendant will be engaged and

12

cooperative then minutes later the Defendant will become disengaged, irrational, and uncooperative. There have been instances when the Defendant is concerned about mounting a defense, then there are moments within that same meeting that the defendant indicates that he has no desire to prepare a defense." *Id.* at 5. Standby counsel asserted that such behavior had existed since he had become involved in the case, but had recently increased. *Id.*

In oral argument, however, standby counsel acknowledged that the district court could properly proceed without a psychiatric examination. By his own admission, standby counsel was "simply asking the Court to make a determination whether or not an exam would be appropriate. We bring the matter to the Court's attention, and we'd ask the Court simply to determine whether or not there even should be one." (R. 116: Mot. Tr. PgID 758.) Since standby counsel did not even assert that in his opinion an examination was necessary, and he provided no details supporting any reason to question the defendant's competency, the district court acted well within its discretion in deciding not to order an examination.

13

Significantly, at the time Abdulmutallab entered his guilty plea, standby counsel agreed with the court that the defendant was "competent to proceed in this matter." (R. 114: Tr. of Jury Trial, Vol. 5, Page ID 678.) So whatever concerns standby counsel had had about Abdulmutallab's competence two months earlier, those concerns had been allayed by the time the trial began.

*Drope v. Missouri*, 420 U.S. 162, 180 (1975), identified a number of factors which a court should consider in determining competency. Although *Drope* held that no one factor is dispositive, in every case where the Supreme Court has found error for failing to hold a competency hearing, the defendant had a significant history of mental illness. In *Drope* itself, a psychiatrist had examined the defendant "and found that he had psychiatric problems and was in need of care." 420 U.S. at 169. In *Pate v. Robinson*, 383 U.S. 377, 378 (1966), the defendant "had a lengthy history of disturbed behavior." Similarly, *Indiana v. Edwards*, 554 U.S. 164, 169 (2008), involved a defendant "with a lengthy record of psychiatric reports."

Here, the *Drope* factors support the district court's determination not to order a competency hearing. Defendant displayed no irrational

14

behavior, the first *Drope* factor.[2] His demeanor at trial, the second

*Drope* factor, was normal and properly respectful, particularly for

someone who asserted that the district court lacked jurisdiction over

him as a Muslim.  *See, e.g.,* R. 79: Motion for Detention Hearing, PgID

391 (defendant, in handwritten motion to district court, demanding

immediate release because as a Muslim he did not recognize authority

of U.S. courts to judge him). And the final *Drope* factor, previous

medical opinion on competency, was lacking because there were no

---

[2] The fact that defendant was engaged in a suicide mission did not itself
prove lack of competence. The district court ruled admissible, and the
government was prepared to present through Dr. Simon Perry, Ph.D.,
evidence at trial as to the doctrine of martyrdom, which motivated
defendant's attack. (R. 148: Mot. Tr. PgID 1992-1995). (Although it
ruled Dr. Perry's testimony admissible at trial, the district court later
ruled it cumulative for sentencing and struck Dr. Perry's memorandum
to the Court. (R. 139: Tr. of Sentencing, Page ID 1243-1245).)
Nonetheless, Dr. Perry led a research team which conducted the largest
study ever of failed martyrdom or suicide bombers. (R. 130: Sent.
Memo., Attach. 1, PgID 1135-1136). As Dr. Perry notes, the act of
martyrdom is a rational response by an individual seeking to improve
his status; it is a sign of rationality, not lack of competency. (*Id.* at PgID
1138-1143.) Defendant views himself as a soldier carrying out a
mission, and he is no less mentally competent by virtue of undertaking
such a mission than is any soldier undertaking a dangerous operation.

issues in Abdulmutallab's past which would have raised questions about his competency.

At the competency hearing, Abdulmutallab directly and articulately addressed the district judge on other subjects, arguing that he be permitted to receive certain personal items such as a radio. (R. 116: Mot. Tr., PgID 766-767.) While the subject matter had essentially nothing to do with the trial, the colloquy made clear that Abdulmutallab understood the nature of the proceedings, that he understood the role of the district court, that he was articulate, and that he grasped and was capable of arguing legal principles, such as that similarly situated individuals should be treated alike. (*Id.*) That exchange justified the district court in concluding there was no need for a competency examination.

Even though Abdulmutallab waived his right to counsel, the district court permitted hybrid representation: Abdulmutallab represented himself when he wished to, but he allowed standby counsel to handle many aspects of his defense. (See R. 116: Tr. of Motion Hearing and Pretrial Conference, PgID 762, 779; R. 139: Tr. Sent. PgID 1210.) Abdulmutallab participated extensively in various motion

hearings, making objections as to procedure (R. 117: Tr. of Evidentiary Hearing Vol. 1, PgID 793), and dealing with evidentiary issues such as proposed stipulations. (*Id*. at 696-697.) Again, by his actions and words, the defendant showed a clear understanding of the nature of the proceedings and the role of the district court.

Abdulmutallab had no difficulty making comprehensible legal arguments. (R. 148: Mot. Tr. PgID 2003-2004). While the defendant lacked legal training, there is no question that he understood the nature of the proceedings and the role of the district court. For instance, Abdulmutallab personally responded to a government motion seeking to preclude reliance on a duress defense, stating "Yeah, with regards to that motion, I do not intend to use those defenses, but I also feel it's not for the Government to say what I can and can't do during trial." (*Id*., Pg ID 1976-1977.) The district judge responded:

> No, it's for me to say what you can and can't do during trial, but the Government needs to be able to, and they are able to, raise these issues ahead of time so that we don't have mistrial, we don't have things presented in front of the jury that are inappropriate. So if you're telling me now that you do not intend to raise the defense of duress or your mental condition at the time as a defense, then I'll grant the Government's motion and I will instruct you that you are not to raise those issues in front

> of the jury. If something comes up, you need to
> bring it to my attention before anything happens
> with the jury in the courtroom.

Abdulmutallab replied, "Yeah, understood" (*id.*)*,* demonstrating both his

understanding and his competence. When the government moved to

admit demonstrative evidence of the power of the explosive defendant

took on board Flight 253, Abdulmutallab argued articulately that the

demonstration was not valid "because unless a test is done with

conditions similar to the time that they say this incident occurred which

would be a test of a plane that is actually in the air, then I think it's, it's

very speculative to say this is what could have happened with such a

device if it, if, you know, if such and such happened, and so on and so

on." (*Id.* at PgID 983; *see also id.* at 1992-1993) (Defendant engaging

district judge in discussion of qualifying and ruling on expert testimony

at trial)). Thus, throughout the proceedings, Abdulmutallab never gave

the district court any reason for doubt under either prong of the *Dusky*

test: he clearly had "a rational as well as factual understanding of the

proceedings against him," and he demonstrated his "ability to consult

with his lawyer with a reasonable degree of rational understanding" by

dividing up responsibility with his attorney for conducting those

proceedings. Under these circumstances, the district court did not abuse its discretion in declining to order a competency examination.

**B.    The district court did not abuse its discretion in declining to order a psychological examination prior to allowing Abdulmutallab to waive counsel.**

Abdulmutallab also makes the related argument that even if it was appropriate to allow him to stand trial without a competency examination, the district court erred by not ordering such an examination prior to permitting Abdulmutallab to proceed *pro se*. This court reviews under an abuse of discretion standard the question of whether there was reasonable cause to question a defendant's competence before the district court accepted a waiver of counsel. *United States v. Ross*, 703 F.3d 856, 867 (6th Cir. 2012). In this case, there was **no** cause to question Abdulmutallab's competence at the time he waived his right to counsel and asked the court to allow him to represent himself. None of the three or four lawyers from the federal defender office who had been representing Abdulmutallab for nine months by that point expressed any doubt about his competence and standby counsel's eventual motion for a competency examination

19

alleged that Abdulmutallab's behavior did not become troublesome until late in standby counsel's relationship with him.

A defendant has a Sixth Amendment right under the Constitution to represent himself. *Faretta v. California*, 422 U.S. 806 (1975). In the present case, in granting Abdulmutallab's motion for self-representation, the district court carefully followed the model inquiry set forth in the Bench Book for United States District Judges, as required by this Court under its supervisory powers. *United States v. McDowell*, 814 F.2d 245, 249-250 (6th Cir. 1987). (R.71: Status Conf. Tr. PgID 324-332.) After that inquiry, the district court found that Abdulmutallab knowingly and voluntarily waived his right to counsel.

Citing *Indiana v. Edwards*, 554 U.S. 164 (2008), counsel argues that there is a higher standard for competency to self-represent than for competency to stand trial. That premise is false. The *Dusky* standard applies, as the Supreme Court explained in *Godinez v. Moran*, 509 U.S. 389 (1983). In *Godinez*, the Court "reject[ed] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard." *Id.* at 398. *Indiana v. Edwards* neither alters that standard

20

nor requires a district court to conduct a hearing to determine whether a defendant who is competent to stand trial is also competent to represent himself at trial. Rather, the narrow holding of *Edwards* is that a trial court may deny a defendant his constitutional right to self-representation if the defendant is so severely mentally ill that he is unable to carry out the basic tasks necessary for self-representation. *See United States v. Thompson*, 587 F.3d 1165, 1171-72 (9th Cir. 2009). *Edwards* itself reaffirmed that a court may constitutionally permit a defendant to represent himself if he meets the minimal level of competency to stand trial. *See id.* at 173 (referring to the situation where a defendant's mental competency "falls in a gray area between *Dusky's* minimal constitutional requirement that measures a defendant's ability to stand trial and a somewhat higher standard that measures mental fitness for another legal purpose," 544 U.S. at 172, the Court stated "*Godinez* involved a State that sought to permit a gray-area defendant to represent himself. *Godinez's* constitutional holding is that a State may do so. But that holding simply does not tell a State whether it may deny a gray-area defendant the right to represent himself—the matter at issue here.")

In *Godinez*, the defendant, Moran, waived counsel and then entered a guilty plea. The Nevada authorities, who prosecuted Moran, sought to uphold his waiver of counsel as constitutionally sufficient. In finding the waiver valid, the Supreme Court held that the *Dusky* standard of competence to stand trial is also the proper standard for determining competency to waive counsel and plead guilty. See generally Argument A, *supra*. Competency for self-representation does not require a higher standard, the Court stated, because "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id*. at 399 (emphasis in original). "Thus, while 'it is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts,' a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation." *Id*. at 400 (emphasis in original, citation omitted). Because there was no question in *Godinez* that the defendant was competent to stand trial, his waiver of counsel and subsequent guilty plea were valid and his conviction thus upheld.

In *Edwards*, by contrast, the Indiana trial court, "[r]eferring to the lengthy record of psychiatric reports, noted that Edwards still suffered from schizophrenia and concluded that 'with these findings, he's competent to stand trial but I'm not going to find he's competent to defend himself.'" 554 U.S. at 169. The trial court denied Edwards's request to proceed pro se, and in the Supreme Court the question was "whether the constitution forbids a State from insisting that the defendant proceed to trial with counsel, the State thereby denying the defendant the right to represent himself." *Id.* at 167.

In finding that the defendant could be both competent to stand trial and not competent to represent himself, the Supreme Court distinguished *Godinez* on two bases. First, the Court said, "In *Godinez*, the higher standard sought to measure the defendant's ability to proceed on his own to enter a guilty plea; here the higher standard seeks to measure the defendant's ability to conduct trial proceedings." 544 U.S. at 173. Second, the Court stated, "For another thing, *Godinez* involved a State that sought to permit a gray-area defendant to represent himself. *Godinez's* constitutional holding is that a State may do so. But that holding simply does not tell a State whether it may deny

a gray-area defendant the right to represent himself—the matter at issue here." 544 U.S. at 173. The Court went on to hold that a State could, within constitutional limitations, deny such a defendant the right to represent himself.

In this case, the district court did not attempt to deny Abdulmutallab the right to represent himself. Thus, the proper standard of competency to apply is that of *Godinez*: "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *See Dusky*, 362 U.S. at 402. That level of competency cannot seriously be challenged—defendant clearly had a rational and factual understanding of the proceedings against him throughout, and he actually both consulted and collaborated with counsel, dividing up and sharing litigation responsibilities. See generally Argument A, *supra*.

Although Abdulmutallab waived his right to counsel, he had the assistance of standby counsel at all times and the district court permitted hybrid representation. The defendant undertook only those portions of his defense he wished to, and allowed standby counsel to

24

handle the remainder. See R.116: Mot. Tr. PgID 762, 779; R. 139: Tr.

Sent. PgID 1210 (standby counsel stating it was defendant's intention

that standby counsel make any responses to any legal issues).

In point of fact, standby counsel then effectively acted as counsel

throughout: he wrote and filed every motion, he argued almost every

motion, and he examined all witnesses at the suppression hearing.

Defendant was involved to only a very limited degree: in three days of

individualized voir dire, he questioned a single prospective juror (juror

number 119), while standby counsel questioned the remaining jurors.

(R. 143: Tr. October 4, 2011, at 30-32, PgID 1310-1312). The defendant

coherently argued several evidentiary motions, although many of those

motions were reargued by standby counsel prior to opening statement.

(R. 150: Tr. October 6, 2011, pages 29-37, PgID 2055-2063). And finally,

at sentencing, defendant instructed standby counsel to address all legal

arguments, including the constitutionality of the mandatory sentences

(R. 139: Tr. Sent. PgID 1210; see Argument D, *infra*). After those issues

were resolved, Abdulmutallab addressed the court himself. He did not

allocute in the traditional way, but rather made jihadi statements

justifying his actions. (R. 139: Tr. Sent. PgID 1243-1245).

Thus, although the court granted defendant's request to waive counsel and proceed pro se, in fact Abdulmutallab was represented throughout the proceedings. *See United States v. Ross*, 703 F.3d 856, 871-873 (finding that if standby counsel provided "meaningful adversarial testing" then defendant was not deprived of counsel). He ultimately pleaded guilty against the advice of standby counsel. (R. 114: Tr. PgID 672-674). But even as far as that decision, he had the benefit of the advice of counsel. And since the prosecutor never made a plea offer (*id*. at 672-673), Abdulmutallab did not need an attorney to negotiate on his behalf. Defendant's limited role in conducting proceedings, with standby counsel's assistance did not, in fact, leave the defendant in a situation where he was without counsel.

Under these circumstances, defendant effectively waived counsel only to enter a guilty plea, which means that the standard of competence is that of *Godinez* and *Dusky*. *See Edwards*, 554 U.S. at 172-173. As noted in Argument A, *supra*., it cannot be seriously disputed that defendant met the *Dusky* test: he clearly had "a rational as well as factual understanding of the proceedings against him," and he demonstrated his "ability to consult with his lawyer with a

26

reasonable degree of rational understanding" by in fact dividing up responsibility with his attorney for conducting those proceedings. There is no basis in this record to conclude that the district judge abused her discretion in declining to order a competency examination.

Even if a higher standard of competence were required, this record would not support a conclusion that the district court abused its discretion by declining to order a competency examination before Abdulmutallab waived counsel. Because she presided over the case from its inception, as of August 2011, when standby counsel's motion challenging Abdulmutallab's competency was filed, the district judge's interactions with Defendant had covered a significant period of time. Importantly, when Abdulmutallab asked to discharge his counsel and represent himself, the federal defenders, who had represented him for more than nine months, did not question Abdulmutallab's competence and did not suggest that the court should deny his request. *See* R. 71: Tr. PgID 322-335.

Even if standby counsel's allegations required the district court to take a second look at Abdulmutallab's waiver of counsel (which had occurred eleven months earlier), the court was justified in not ordering

27

a competency examination and permitting the defendant to proceed with hybrid representation. The district court was well aware of the fact that Abdulmutallab, a terrorist acting on behalf of Al Qaeda, claimed religious authority for his actions. *See, e.g.,* R. 79: Mot. for Det. Hearing, PgID 391 (defendant, in handwritten motion to district court, demanding immediate release because as a Muslim he did not recognize authority of U.S. courts to judge him). Thus, it is not surprising that Abdulmutallab would be pulled between his religious belief that the district court could not try him, and the realization that despite that belief the court *was* going to try him, and that he faced near-certain conviction and life imprisonment. The tension between denying the legitimacy of the proceedings and knowledge of the likelihood of punishment could easily cause an individual to equivocate between mounting a defense and disdaining to do so; it would not, however, give a judge reason to question his competency.[3]

———————————

[3] Abdulmutallab's dilemma regarding his rejection of U.S. courts' legitimacy to try him also explains his decision to proceed pro se. As the defendant told the district court, he wanted to represent himself because his lawyers spent time on "what they believe is in my best interest, but not what I believe is in my best interest." (See R. 71: Tr. (*Continued*)

The district court recognized that this pressure on Abdulmutallab would increase as trial drew near. *See* R. 116, Mot. Tr. PgID 761 ("I understand that it's stressful for any defendant moving toward a criminal trial in which he faces the kind of penalties that Mr. Abdulmutallab is facing[.]"). But manifesting the effects of that pressure, without more, did not warrant a competency examination. This was particularly so where the district judge personally "had the opportunity to interact with Mr. Abdulmutallab on a number of prior occasions in court," and "I've not had any sense that" he lacked competency. (*Id*.).

His appellate counsel asserts that Abdulmutallab's response to the district court's inquiry whether he wanted or would cooperate with a competency examination was "rambling." Def. Br., at 39; R. 116: Mot. Tr. PgID 762-763. Maybe so, but it was nevertheless quite coherent.

---

(*Footnote continued from previous page*)
PgID 327.) Abdulmutallab's attorneys were duty bound to operate within the legal system to defend him as fully as possible. An effective defense, however, might require renouncing Abdulmutallab's religious belief in the illegitimacy of U.S. courts' exercise of jurisdiction over him, or in his religious obligation to wage war on the United States. The only way for Abdulmutallab to overcome what he called a "conflict of interests" was to personally take control of the proceedings.

Abdulmutallab first said that he wanted a competency examination, because it would demonstrate his competency to represent himself. But then it was explained to him "the reasons why, or the arguments that have to be put forward before even someone has that type of examination, and I said that's counter-productive to what I even want, so I don't want the examination." *Id.* at Page ID 762. In other words, Abdulmutallab was willing to have the examination at first, because he wanted to demonstrate his ability to represent himself, but when he found out that the threshold for ordering a competency examination was to find a likelihood of impairment, he concluded that such a course of action would be counterproductive. The district court did not err by relying on Abdulmutallab's statement.

Finally, appellate counsel's suggestion that Abdulmutallab must have been incompetent because he "wanted to represent himself in a case where he was facing a mandatory life sentence even though he had never studied law, was unfamiliar with the Federal Rules of Evidence, and had essentially no legal knowledge," Def. Br. at 36, fails as a matter of law. In *United States v. Back*, 307 Fed. Appx. 876 (6th Cir. 2008), this Court addressed "defendant's contention that seeking to proceed pro se,

30

especially when confronted with serious charges, inherently raises the question of competency. As the Supreme Court has made clear, while a criminal defendant who proceeds pro se may, like any other pro se litigant, have a fool for a client, that does not mean that he or she is presumptively incompetent[.]" *Id*. at 879 (citing *Godinez*, 509 U.S. at 401 n. 13). "While defendant's decision may have been ill-advised, the district court did enough to ascertain that defendant was capable of understanding the consequences of his course of action." *Back* at 879. The same is true here.

## II. Abdulmutallab's guilty plea waived his right to appeal the district's court's finding that his post-arrest statement was voluntary.

The defendant asks this Court to review the district court's finding that a statement he made to FBI agents at the University of Michigan Hospital on December 25, 2009, was voluntary. (*See* R. 55: Motion to Suppress, PgID 244-253; R. 84: Response, PgID 445-463; R. 117: Hearing Tr. Vol. 1 PgID 796-949; R. 118: Hearing Tr. Vol. 2, PgID 952-982; R. 94: Order Denying Motion, PgID 572-583). By pleading guilty, however, Abdulmutallab waived his right to appeal that issue.

When a criminal defendant pleads guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea. . . ." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The only exception to the rule of *Tollett v. Henderson* is a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2): So, "a defendant who pleaded guilty may not appeal an adverse ruling on a pre-plea motion to suppress evidence 'unless he has preserved the right to do so by entering a conditional plea of guilty in compliance with' Rule 11(a)(2)." *United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003) (citation omitted).

Abdulmutallab pleaded guilty, without a plea agreement, and without preserving his right to appeal the ruling on his suppression motion under Rule 11(a)(2). He did not seek the consent of the court or the government to do so. (R. 114: Jury Trial, Vol. 5, Page ID 672-707). Thus, under *Tollett v. Henderson* and *Bell*, he waived review of the suppression issue.

32

Counsel makes two arguments seeking to circumvent the waiver rule. First, he states that Defendant was incompetent, so the waiver was invalid. However, if true, that would mean simply that the guilty pleas were invalid, and this Court would reverse Defendant's convictions and remand for further proceedings. Counsel also states that "In the interests of judicial economy and efficiency, the Court should reach" the merits of Abdulmutallab's claim that his statement was involuntary. Def. Br. at 46. No authority permits this Court to disregard the well-established rule that a guilty plea works a waiver. Consequently, this issue is not properly before the Court.

## III.    Abdulmutallab's sentences were lawful.

### A.    The life sentences were not cruel and unusual.

Defendant claims that his four sentences of life imprisonment violate the Eighth Amendment's prohibition of cruel and unusual punishments, and are substantively unreasonable pursuant to 18 U.S.C. § 3553(a). An Eighth Amendment challenge to a sentence is a question of law, reviewed de novo. *United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009).

Because the indictment charged three violations of 18 U.S.C.
§ 924(c) (counts two, four and six), counts four and six carried
mandatory sentences of life imprisonment. *See* 18 U.S.C.
§ 924(c)(1)(C)(ii) ("In the case of a second . . . conviction under this
subsection, the person shall – if the firearm is a . . . destructive device
. . . be sentenced to imprisonment for life."). The district court denied
Abdulmutallab's motion seeking to have the mandatory penalty
provisions struck down. (R.135: Order, PgID 1195; R.139: Tr. Sent.
PgID 1214-1216.)

Count one (conspiracy to commit an act of terrorism transcending
national boundaries) and count seven (attempted use of a weapon of
mass destruction) each was punishable by a maximum sentence of life
imprisonment, which the district judge, in her discretion, imposed. On
appeal, Abdulmutallab challenges both the mandatory and
discretionary sentences as being "cruel and unusual" within the
meaning of the Eighth Amendment. Def. Br. at 48-50.

The Supreme Court has interpreted the Eighth Amendment's
prohibition of "cruel and unusual punishments" to impose a "narrow
proportionality principle that applies to noncapital sentences." *Ewing v.*

34

*California*, 538 U.S. 11, 20 (2003). In general, courts must defer to the "broad authority that legislatures necessarily possess" in setting the punishments for crimes. *Solem v. Helm*, 463 U.S. 277, 290 (1983). The "narrow proportionality" analysis does not require "strict" proportionality between the crime and the sentence. Only extreme sentences that are grossly disproportionate to the crime violate that principle. *Ewing*, 538 U.S. at 23. The proportionality principle would only come into play "in the extreme example," such as where "a legislature made overtime parking a felony punishable by life imprisonment." *Id.* (citation omitted). In *Solem*, the Supreme Court identified three factors to consider in deciding whether a sentence was so grossly disproportionate that it violated the Eighth Amendment: (1) "the gravity of the offense and the harshness of the penalty;" (2) "the sentences imposed on other criminals in the same jurisdiction;" and (3) "the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. at 292. Courts need not reach the second and third factors in all cases: "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to

an inference of gross disproportionality." *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (opinion of Kennedy, J.); *see Ewing*, 538 U.S. at 23-24 ("[t]he proportionality principles in our cases distilled in Justice Kennedy's concurrence [in *Harmelin*] guide our application of the Eighth Amendment.").

This case is not one where a comparison of the penalty to the crime supports an inference of gross disproportionality. Abdulmutallab committed acts of terrorism, not a petty offense. In evaluating the gravity of the offense, the Court may consider the "harm caused or threatened to the victim or society, and the culpability of the offender." *Solem*, 463 U.S. at 292. In considering the culpability of the defendant, the Court may look to his motive and intent in committing the crimes. *Id*.

The district court found that "the nature and circumstances of the offense are not in dispute. Abdulmutallab attempted to blow up an airplane with 289 people on board and he failed to accomplish this objective only because of a technical problem with his bomb. Abdulmutallab, by his own statements, was deeply committed to his mission, seeking out and finding al Qaeda and Anwar Al-Awlaki,

volunteering for a martyrdom mission and then becoming involved in planning and training for a significant amount of time." (R.139: Tr. Sent. PgID 1255-1256). "Defendant has never expressed doubt or regret or remorse about his mission. To the contrary, he sees that mission as divinely inspired and a continuing obligation." (*Id.* at PgID 1256.)

The district court found that "the defendant poses a significant, ongoing threat to the safety of American citizens everywhere. I already recited some of the things that he said when he pled guilty. . . Thus, by his own words, defendant has shown that he continues to desire to harm the United States and its citizens, and that he views it as his religious obligation to do so. I believe that defendant has stated and it is clear that he has enormous motivation to carry out another terrorist attack but that he lacks the capability of doing that because of his incarceration. This Court has no ability to control the defendant's motivation, which does appear to be unchanged. However, I can control defendant's opportunity to act on those intentions" by imposing life sentences. (R. 139: Tr. Sent. PgID 1258-1259).

The district court's conclusion that defendant is an unrepentant would-be mass murderer is fully justified by the record. The

37

discretionary life sentences are fully proportional with the crimes, particularly in light of Abdulmutallab's ongoing desire to engage in terrorism. Moreover, this Court has held that an Eighth Amendment challenge must fail if a defendant receives a sentence within the guideline range, and, as here, the Guidelines have clearly contemplated "the gravity of the offense and the harshness of the penalty." *United States v. Herrick*, 2013 WL 275908 (6th Cir. 2013). Simply put, the discretionary life sentences as to counts one and seven do not violate the Eighth Amendment's narrow proportionality principle.

The mandatory life sentences on counts four and six also are constitutional. The analysis in *Harmelin*, which involved a mandatory life sentence for possession of 650 grams of cocaine, is controlling. In this case, the defendant's offenses are far more egregious than the non-violent drug offense for which a life sentence was permitted in *Harmelin*. Given that the mandatory life sentence was constitutional in *Harmelin*, *a fortiori* the sentences here are constitutional. *See United States v. Hill*, 30 F.3d 48, 51 (6th Cir. 1994) ("Because the circumstances underlying [the defendant's] conviction and sentence are

more egregious than those that justified the life sentence in *Harmelin*, this court concludes that [the defendant's] life term is constitutional.").

### B.    The life sentences were substantively reasonable.

"Our review of a sentence for substantive reasonableness 'requires inquiry into . . . the length of the sentence and the factors evaluated . . . by the district court in reaching its sentencing determination.'" *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (citation omitted). "Review for substantive reasonableness focuses on whether a sentence is adequate, but not 'greater than necessary' to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a). A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* (citations omitted). "We 'apply a rebuttable presumption of substantive reasonableness' to sentences within the Guidelines. Regardless of whether we would have imposed the same sentence, we must afford due deference to the district court's decision to determine the appropriate length of the defendant's sentence, so long as

it is justified in light of the relevant § 3553(a) factors." *Id*. (citations omitted).

In the present case, the sentences were reasonable. The district court relied on the nature and circumstances of the offense—an act of terrorism. (R.139: Tr. Sent. PgID 1254). The district court also relied on the seriousness of the offenses and the need to protect the public from defendant's future dangerousness. 18 U.S.C. § 3553(a)(1)(A),(C). Only by substituting its judgment for the district court's could a reviewing court conclude that the district court gave too much weight to those factors as against Abdulmutallab's youth, the (slight) possibility of his rehabilitation, and the fact that Abdulmutallab's act of terrorism did not actually injure anyone but himself. See Def. Br. at 55. Moreover, as to counts four and six, "A statutorily required sentence, which is what [the defendant] received, is per se reasonable[.]" *United States v. Farrior*, 535 F.3d 210, 224 (4th Cir. 2012) (citation omitted); "§ 3553(a) factors do not apply to congressionally mandated sentences." *United States v. Penney*, 576 F.3d 297, 317 (6th Cir. 2009); *United States v. Franklin*, 499 F.3d 578, 585 (6th Cir.2007).

## IV.    Section 924(C) is a proper exercise of Congress's authority.

Finally, Abdulmutallab argues that his convictions as to counts two, four and six must be reversed because, as applied to the facts of this case, Congress lacked authority under the Commerce Clause to enact 18 U.S.C.§ 924(c), the statute charged in each of those counts. The district court rejected this argument. (R.135: Order Denying Motion, PgID 1195; R.139: Tr. Sent. PgID 1214-1216.) This Court reviews de novo a claim that Congress exceeded its constitutional power in enacting a statute. *United States v. Rose*, 522 F.3d 710, 716-717 (6th Cir. 2008); *United States v. Al-Zubaidy*, 283 F.3d 804, 810 (6th Cir. 2002).

There are two types of attacks on the constitutionality of a statute: a facial attack, and an as-applied attack. A facial challenge seeks to "establish that no set of circumstances exist under which the Act would be valid[,]" *Amelkin v. McClure*, 205 F.3d 294, 296 (6th Cir. 2000) (citation omitted), and thus is "the most difficult challenge to mount successfully[.]" *Id*. "[A]n 'as-applied' challenge consists of a challenge to the statute's application only to the party before the court." *Id*. Abdulmutallab's challenge to § 924(c) is an as-applied challenge.

41

Section 924(c) is a penalty provision, requiring enhanced punishment for offenses involving, among other things, firearms and destructive devices when such items are used or carried during and in relation to, or possessed in furtherance of, a drug trafficking crime or a crime of violence. The underlying drug trafficking crime or crime of violence must be one "*for which the person may be prosecuted in a court of the United States.*" 18 U.S.C. § 924(c)(1)(A) (emphasis added).[4] By definition, then, a charge under § 924(c) must necessarily be based on an underlying crime that is properly within federal jurisdiction.

This Court has upheld § 924(c) against an as-applied Commerce Clause challenge in *United States v. Ricketts*, 317 F.3d 540 (6th Cir. 2003). In *Ricketts*, this Court held that analysis of whether § 924(c) is a

---

[4] In the present case, count two, the first § 924(c) charge, was tied to count one, which charged conspiracy to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. §§ 332b(a)(1) and 2332b(a)(2). Count four, the second § 924(c) charge, was tied to count three, which charged attempted murder within the special aircraft jurisdiction of the United States, in violation of 18 U.S.C. § 113 and 49 U.S.C. § 46506. Count six, the final charge under § 924(c), was tied to count five, which charged willfully placing a destructive device upon and in proximity to a civil aircraft which was used and operated in interstate, overseas, and foreign air commerce, in violation of 18 U.S.C. § 32(a)(2).

proper exercise of congressional power under the Commerce Clause must not focus on § 924(c) as "a free standing statute[]," but rather must focus on the underlying crime. 317 F.3d at 543. In *Ricketts*, the underlying crime was "a drug conspiracy [which] does substantially affect interstate commerce." *Id*. Thus, because § 924(c) is constitutional depending on whether the underlying crime was properly within Congress's power to enact, this Court upheld the conviction.

Abdulmutallab does not challenge the constitutionality or jurisdictional basis of the underlying crimes in this case, so his challenge to § 924(c) fails.  On appeal, Abdulmutallab tries to distinguish *Ricketts*, arguing that the destructive device prong of the statute "is not limited to or tied in any way to situations substantially affecting interstate commerce." Def. Br. at 52. That argument shows a misunderstanding of both *Ricketts* and § 924(c). Section 924(c)'s constitutionality is not free standing; it must be determined on a case-by-case basis, depending on whether it is tied to an underlying crime "for which the person may be prosecuted in a court of the United States." A crime "for which the person may be prosecuted in a court of the United States" is shorthand for a case in which there is proper

federal jurisdiction. In many instances, such a crime will be one which substantially affects interstate commerce, as that is the constitutional basis for many federal criminal statutes. However, jurisdiction based, for example, on the federal status of a victim, *e.g.,* 18 U.S.C. § 115(a)(1)(A) (assaulting, kidnaping, or murdering United States official), also provides federal jurisdiction over the underlying crime, and would render § 924(c) constitutional as applied to such a case. Thus, the real issue is not the Commerce Clause, but whether the underlying crimes have proper federal jurisdiction. Application of the statute in *Ricketts* was constitutional because it was tied to the underlying drug conspiracy statute, which is itself constitutional based on the substantial effect of drug trafficking on interstate commerce.

In this case, there are three charges underlying the defendant's § 924(c) charges, and each falls within Congress's Commerce Clause authority. 18 U.S.C. § 1113 and 49 U.S.C. § 46506 (the predicate offenses for count 4) and 18 U.S.C. § 32 (the predicate offense for count

6) involve a civil aircraft of the United States,[5] and the Supreme Court has already upheld the regulation of vehicles used in interstate commerce, as well as the regulation of instrumentalities and channels of interstate commerce. *See Southern R. Co. v. United States*, 222 U.S. 20, 26-27 (1911) (upholding amendments to Safety Appliance Act as applied to vehicles used in intrastate commerce); *see also United States v. Lopez*, 514 U.S. 549, 558 (1995). In fact, the Supreme Court has explicitly mentioned 18 U.S.C. § 32 as within Congress's Commerce Clause authority. *Perez v. United States*, 402 U.S. 146, 150 (1971) ("The Commerce Clause reaches, in the main, three categories of problems. . . Second, protection of the instrumentalities of interstate commerce, as for example, the destruction of an aircraft (18 U.S.C. § 32), or persons or things in commerce").

The predicate offense for count 2, 18 U.S.C. § 2332b(a)(1), an act of terrorism transcending national boundaries, includes as an element the

---

[5] 49 U.S.C. § 46506, charged in count 3, provides that murder as defined by 18 U.S.C. § 1113 is a crime if it is committed in the special aircraft jurisdiction of the United States. As relevant here, the special aircraft jurisdiction of the United States includes a civil aircraft of the United States in flight. 49 U.S.C. § 46501(2)(A).

use of a facility of interstate or foreign commerce. 18 U.S.C. § 2332b(1)(A), (B). As explained above, the Supreme Court has noted the validity of a statute protecting civil aircraft of the United States as regulation of the intrumentalities of commerce, and this statute does the same. *See Perez*, 402 U.S. at 150. And one of the main cases on which defendant relies, *United States v. Lopez*, expressly recognized that Congress has authority to keep "the channels of interstate commerce free from . . . injurious uses," and "is empowered to regulate and protect the instrumentalities of interstate commerce[.]" 514 U.S. at 558.[6]

In this case, Flight 253, a commercial, international flight, for which the defendant purchased a ticket, was a channel and instrumentality of interstate and foreign commerce. Moreover, at the time he pleaded guilty, Abdulmutallab specifically acknowledged the interstate and foreign commerce elements of the offenses, and he

---

[6] This case also involves the Foreign Commerce Clause because the aircraft was traveling from the Netherlands. Congress has broad authority to regulate air traffic in and out of the United States under that clause. *See United States v. Pendleton*, 658 F.3d 299, 307-308 (3rd Cir. 2011); *United States v. Clark,* 435 F.3d 1100, 1113 (9th Cir. 2006).

specifically admitted facts, such as traveling between the Netherlands and the United States as a commercial air passenger, which proved those elements. (R. 114: Tr. Vol. 5, PgID 697, 701-704). Thus, the requisite interstate or foreign commerce element was proven as to all of the predicate offenses, and the § 924(c) offenses, which were tied to them, were constitutional as applied. *Ricketts*, 317 F.3d at 543.

## Conclusion

For the foregoing reasons, and based on the entire record, the judgment of the district court should be affirmed.

Respectfully submitted,

Barbara L. McQuade
United States Attorney

s/ Jonathan Tukel
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9749
email: Jonathan.Tukel@usdoj.gov

Dated:  May 3, 2013

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 9,406 words, excluding the parts of the brief exempting by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-pt. Century Schoolbook.

*/s/* Jonathan Tukel
Assistant United States Attorney

## Certificate of Service

I certify that on Friday, May 03, 2013, I electronically filed this sealed brief for the United States with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, and that it was also served electronically on the attorney for defendant:

Travis Alan Rossman

/s/ Jonathan Tukel
Assistant United States Attorney

49

# Relevant District Court Documents

Appellee, the United States of America, designates as relevant the

following documents available electronically in the district court's

record, case number 10-cr-20005, in the Eastern District of Michigan:

| Record Entry No. | Document Description | PgID |
|---|---|---|
| R. 1 | Complaint | 1-6 |
| R. 3 | Order Appointing Federal Defender | 8 |
| R. 4 | Attorney Appearance-Siefer | 9 |
| R. 5 | Attorney Appearance-Price | 10 |
| R. 6 | Attorney Appearance-Soles | 11 |
| R. 7 | Indictment | 12-19 |
| R. 20 | Order appointing stand-by counsel | 54 |
| R. 28 | First Superseding Indictment | 86-95 |
| R. 55 | Motion to Suppress Statements | 244-257 |
| R. 71 | Transcript of Pretrial Conference held 09/13/10 | 322-335 |
| R. 79 | Motion for Detention Hearing | 391 |
| R. 84 | Response in Opposition to Motion to Suppress Statements | 445-463 |
| R. 94 | Order denying motion to suppress | 572-583 |
| R. 114 | Transcript of Plea Hearing held 10/12/11 | 670-707 |
| R. 116 | Transcript of Pretrial Conference held 08/17/11 | 757-767, 779 |

| Record Entry No. | Document Description | PgID |
|---|---|---|
| R. 117 | Transcript of Motion Hearing held 09/14/11 | 696-949 |
| R. 118 | Transcript of Motion Hearing held 09/15/11 | 952-982 |
| R. 119 | Transcript of Jury Trial held 10/11/11 | 986, 1003-1090 |
| R. 130 | Sentencing Memorandum by USA | 1119-1155 |
| R. 135 | Order | 1195-1196 |
| R. 136 | Judgment | 1197-1202 |
| R. 137 | Notice of Appeal | 1203 |
| R. 139 | Transcript of Motion Hearing and Sentencing held 02/16/12 | 1210, 1214-1216, 1243-1245, 1254-1260 |
| R. 143 | Transcript of Voir Dire held 10/04/11 | 1310-1312 |
| R. 148 | Transcript of Motion Hearing held 09/27/11 | 1976-1977, 1983, 1992-2004, 2009-2010 |
| R. 150 | Transcript of Voir Dire held 10/06/11 | 2055-2063 |
|  |  |  |
| n/a | Sealed Appendix, Vol. 1 |  |